# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STEVEN GILBERT,

   Plaintiff,

   v.

CO II WARNICK,
RICHARD J. GRAHAM,
CO II F. FAUST,
CO II D. FRAZEE,

   Defendants.

Civil Action No.: ELH-18-2018
(Consolidated Case: ELH-18-2244)

## MEMORANDUM OPINION

Steven Gilbert, the self-represented plaintiff, is a Maryland prisoner incarcerated at Western Correctional Institution ("WCI"). He filed a civil rights suit (ECF 1), as amended (ECF 4), and supplemented (ECF 6), against Warden Richard Graham, Jr. and correctional officers Frederick Faust, Douglas Frazee, and Tyler Warnick, defendants. They have moved to dismiss or for summary judgment. ECF 14. The motion is supported by a memorandum (ECF 14-1) (collectively, the "Motion") and several exhibits. Plaintiff was advised of his right to file a response to the Motion and of the consequences of failing to do so. ECF 15. Gilbert has not responded.

A hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, I shall construe defendants' Motion as a motion for summary judgment, and I shall grant it.[1]

---

[1] By Order of April 5, 2019, this case was consolidated with Case ELH-18-2244. *See* ELH-18-2244, ECF 5; ELH-18-2018, ECF 8. Case ELH-18-2018 was designated as the lead case, and Case ELH-18-2244 was closed. *See* Docket.

## I. Background

Gilbert's Complaint concerns an incident at WCI that occurred on June 11, 2018, involving the use of force by Officers Warnick, Faust, and Frazee. ECF 1; ECF 4; ECF 6. Gilbert claims the three officers "used excessive force on [him] by punching, kicking . . . choking . . . and dragging" him. ECF 6 at 1. According to Gilbert, he was dragged across the compound by the officers in an attempt to break his arms. *Id*. Gilbert was then placed in a "cage" where he was "sprayed . . . twice w[ith] pepper spray," and kicked in the chest and face while he was restrained in handcuffs. *Id*.

Gilbert explains that he has "chronic bronchitis & the pepper spray made [him] stop breathing for 3 mins & they didn't give [him] an inhaler" to assist with breathing. *Id*. He adds that the use of the pepper spray has worsened his chronic bronchitis. *Id*. In addition, he alleges that he sustained an injury to his ribs, as well as a black-eye, a lacerated wrist, and nerve damage to his right thumb. *Id*.

Gilbert seeks eighty million dollars in damages from Graham, and notes that Graham is named as a defendant "due to the fact he is the warden of Western Correctional Institution" and the officers involved "are his officers." *Id*. Gilbert seeks an additional 280 million dollars in damages from Warnick, Faust, and Frazee "for negligence." *Id*.

Defendants admit a use of force incident occurred on June 11, 2018, involving Gilbert. But, they have submitted verified records indicating that the force was required by Gilbert's behavior and did not result in the injuries claimed by Gilbert. ECF 14.

On June 29, 2018, Warden Graham provided a "Serious Incident Report/Use of Force" to Director of Security Operations James Flood at the Maryland Department of Public Safety and

Correctional Services ("DPSCS"). It details the incident of June 11, 2018. *See* ECF 14-3 at 2 (cover letter).

The exhibits submitted by defendants reflect that at about 8:55 a.m. on June 11, 2018, while Gilbert was in the WCI library, Gilbert asked to speak with librarian Liam Kennedy regarding a library book that Gilbert claimed belonged to him. ECF 14-3 at 20 (Notice of Rule Violation by Kennedy).[2] Kennedy stated that the "book has been a part of the Library collection since February 2018" but Gilbert claimed "it was improperly donated to the library by another inmate that had possession of the book." *Id*. Kennedy explained that Gilbert would "need to show [him] compelling evidence that the book belonged to him" before it could be returned to Gilbert. *Id*. After "no more than five minutes of exchange," Kennedy claimed that Gilbert became very agitated and stated, "'I am going to smack you in the fucking face with this book.'" *Id*. Kennedy returned to his office and called the Education Custody Officer's post to report what had occurred. *Id*. Officer Frazee, who was assigned to the duty-post along with Officer Faust, received Kennedy's report of Gilbert's threat. *Id.* Both officers came into the library, clarified the report with Kennedy, identified Gilbert, and escorted him from the library. *Id*.

Frazee told Gilbert he would be subjected to a pat down search and, following the search, he would be required to place his hands behind his back. ECF 14-3 at 21 (Notice of Infraction by Faust).[3] Gilbert refused to comply with the directives. *Id*. Officer Warnick, who had been called to escort Gilbert, arrived as Gilbert kicked Officer Faust in the left shin. *Id*. In response, Warnick

---

[2] The Notice of Infraction charged Gilbert with violation of Rule 104 ("Use intimidating, coercive, or threatening language") and Rule 312 ("Interfere with or resist the performance of staff duties to include a search of a person, item, area, or location."). ECF 14-3 at 20.

[3] Faust's Notice of Infraction charged Gilbert with violation of Rule 101 ("Commit assault or battery on staff"); Rule 400 ("Disobey an order"), and Rule 405 ("Demonstrate disrespect or use vulgar language"). ECF 14-3 at 21.

3

physically restrained Gilbert and put him on the floor. *Id*. Gilbert continued to refuse orders from staff to put his hands behind his back so that he could be handcuffed. *Id*. Sgt. Brown had responded to the area and "knelt down on Gilbert's legs" to assist Frazee, Faust, and Warnick in restraining Gilbert with handcuffs. *Id*. at 15.

Once restrained, Gilbert was escorted to Housing Unit #4 by Warnick and Sgt. J. Krumpach. ECF 14-3 at 16. Warnick reported that as they entered the housing unit door, "Gilbert pulled away and began kicking his legs" towards Sgt. Krumpach and Warnick. *Id*. Sgt. Slate, the officer in charge ("OIC") of the housing unit, ordered Gilbert to stop, but he did not comply with the order. Therefore, Slate deployed a "quick burst of pepper spray" to Gilbert's face, causing him to stop his resistance. *Id*.; *see also id.* at 18 (report by Sgt. Slate). Warnick and Krumpach regained control of Gilbert and placed Gilbert "in the Hu#4 property room cage, where he remained until the arrival of medical." *Id*. M. Klepitch, R.N., evaluated Gilbert and "treated him for exposure to pepper spray." *Id*. Gilbert was then photographed, declined the opportunity to make a statement, and received a decontamination shower. *Id*. Following his shower, Gilbert was escorted to a holding cell where he was placed on "staff alert status." *Id*.; *see also id*. at 17 (report by Sgt. Krumpach).

Klepitch's notes of Gilbert's examination indicate that he was "Sprayed with Red pepper spray over face and upper torso." ECF 14-3 at 23. When Klepitch asked Gilbert what had occurred, Gilbert indicated that "he has been taking his medications but they are not helping." *Id*. Gilbert's breathing was "clear even and non-labored" and he had "[n]o marks on hands[,] face or torso." *Id*. Klepitch referred Gilbert to Behavioral Health for evaluation and treatment based on Gilbert's statement regarding his medication. *Id*. at 23-24.

4

Four days after the incident, Gilbert was seen by Janette Clark, NP for a "wellness check." ECF 14-10 at 11. Nurse Clark described Gilbert as having "[m]ild size ecchymosis of different stages of healing . . . under [his] left eye." *Id.* There were no other visible injuries and Gilbert's breathing was "unlabored." *Id*. On July 20, 2018, a chest x-ray was performed after Gilbert reported being "kicked in the chest 3 weeks go." *Id*. at 15. The x-ray was normal. *Id*. at 13.

Gilbert was charged by Kennedy and Faust with violations of Rule 104, Rule 312, Rule 101, Rule 400, and Rule 405. *See* ECF 14-3 at 20, 21.[4] Gilbert pleaded guilty to all rule violations at a hearing in June 2018. ECF 14-3 at 42-45 (Inmate Hearing Record). Gilbert lost 250 days of good conduct credit; his visitations were indefinitely suspended; and he was placed on disciplinary segregation for 250 days. *Id*.

The Internal Investigations Division ("IID") for DPSCS conducted an investigation into the incident of June 11, 2018. ECF 14-9. In connection with the IID investigation, Detective Sgt. Fagan interviewed Gilbert on February 14, 2019. *Id*. at 9.

Gilbert claimed he was outside the library with the officers and that "they kicked him and tried to break his arms." *Id*. He also claimed that "they drug him back to housing unit 4" and that "he was bleeding" and sustained a black eye and bruised ribs. *Id*. According to Gilbert, Frazee "kicked and punched him" and Warnick "put his foot on [Gilbert's] neck." *Id*. Gilbert also related that he was sprayed with pepper spray. But, he did not mention an exacerbation of a preexisting respiratory condition. *Id*. The IID investigation "discovered no evidence to corroborate Inmate Gilbert's report." *Id*. at 10.

Notably, no video surveillance of the incident was available for review by the IID. This was due to the location of the encounter, which occurred in a hallway between two cameras. And

---

[4] For a description of each rule, *see* notes 1, 2, *supra*.

the property room where Gilbert was pepper-sprayed does not have a surveillance camera in it. ECF 14-4 at 1, ¶¶3-4 (Declaration of Captain Robert Carder).

As noted, Gilbert has not opposed the Motion. And, his Complaint is unverified.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for

---

Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

7

specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Gilbert has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Gilbert is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). And, the district court must "thoroughly analyze[ ]" even an unopposed motion for summary judgment. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013) (citing *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010)). Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a "judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co*., 12 F.3d 410, 416 (4th Cir. 1993).

### III. Discussion

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

11

rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). However, the Amendment "proscribes more than physically barbarous punishments." *Estelle*, 419 U.S. at 103. It "embodies" the "'concepts of dignity civilized standards, humanity, and decency . . . .'" *Id.* at 102 (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). And, the Eighth Amendment is violated when an inmate is subjected to "'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg*, 428 U.S. at 173).

Nevertheless, "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878

13

F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. With respect to the subjective element, an inmate must show that the prison guards used force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotations and citations omitted).

In "assessing whether an officer has acted with 'wantonness,'" a court should consider several factors: "'(1) the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Notably, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards

14

does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Indeed, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

As noted, plaintiff alleges, *inter alia*, the unlawful use of pepper spray. In regard to the use of pepper spray by prison staff, "'[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas *or other chemical agents in quantities greater than necessary* or for the sole purpose of infliction of pain.'" *Iko*, 535 F.3d at 240 (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis added in *Iko*)). But, the use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D. Md. 1978). For example, it may be used in order to control recalcitrant inmates. *Williams*, 77 F.3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the defendant acted with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 238 (concluding that correctional officer was not entitled to qualified immunity where chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like

15

device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).

On the other hand, use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate). *See also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 Fed. Appx. 243 (4th Cir. 2016). Thus, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. Appx. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F. Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown).

Here, the undisputed evidence demonstrates that the use of force was necessitated by the circumstances Gilbert created. His threatened assault on Kennedy was followed by his actual assault on two correctional officers. And, he demonstrated his unwillingness to comply with lawful orders.

To the extent that any physical force was used against Gilbert, there is no evidence that it exceeded that degree of force necessary to gain Gilbert's compliance with lawful orders. The undisputed evidence refutes Gilbert's claims that he was dragged across the ground, beaten to the point that he suffered broken ribs, or was otherwise injured. The response of Frazee, Faust, and

16

Warnick was limited to that which was necessary to restore order and discipline. Notably, Gilbert has failed to come forward with his own sworn statement, nor has he otherwise forecast evidence to support his claim that any physical force used against him was unnecessary. Thus, these defendants are entitled to summary judgment.

To the extent that Warden Graham was named as a defendant on a theory of supervisory liability, Gilbert's claim against him fails. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard*, 268 F.3d at 235 (quoting *Slakan*, 737 F.2d at 372). As noted, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799.

In this instance, the facts do not show that Graham participated in the use of force. And, any endorsement or authorization by Graham of the use of force against Gilbert does not amount to a constitutional violation, as there is no evidence that the Eighth Amendment was violated. Therefore, Graham is also entitled to summary judgment in his favor.

A separate Order follows.

January 13, 2020　　　　　　　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge